FLUGENCIO HERNANDEZ V. THE STATE.

No. 11522. Delivered April 18, 1928.

Rehearing denied May 23, 1928.

**1.—Murder—Chapter 274 of Fortieth Legislature—Statute Construed.**

Where, on a trial for murder, it appearing that the offense, if any, was committed prior to the taking effect of Chapter 274, passed at the Regular Session of the Fortieth Legislature, and Sec. 3a of said Chapter 274, as amended at the Special Session of the Fortieth Legislature, the trial court was correct in instructing the jury that in the event of a conviction, their verdict should fix a penalty of not less than five years.

**2.—Same—Charge of Court—Self-Defense—Against Joint Attack—Issue Not Raised.**

Where, on a trial for murder, the defensive theory of appellant being that he fired the shot which killed deceased, at her husband, who first shot at appellant, there was no issue raised by the evidence of joint self-defense as against the husband of the deceased and of his brother, and the court properly refused to submit such issue in his charge to the jury.

ON REHEARING.

**3.—Same—Murder Statute—Of Fortieth Legislature—Act Construed.**

The murder statute passed at the Regular Session of the Fortieth Legislature, which made the minimum punishment for murder two years' imprisonment, was amended at the Special Session of the Fortieth Legislature so that no offense committed prior to taking effect of Chapter 274 should be affected thereby. The offense at issue here, having occurred prior to the taking effect of the new law, the court properly charged the jury that the minimum punishment was five years. This Act in nowise affected nor is it controlled by Art. 13, P. C. See O'Pyle v. State, 298 S. W. 598, and Flores v. State, 4 (2d) S. W. 43.

Appeal from the District Court of Frio County. Tried below before the Hon. Covey C. Thomas, Judge.

Appeal from a conviction of murder, penalty five years in the penitentiary.

The opinion states the case.

*Magus Smith* and *Mason Maney* of Pearsall, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for murder, punishment five years in the penitentiary.

At a dance on the night before the homicide, altercations occurred between appellant and the husband and brother of deceased. It is claimed by the defense that threats were made at that time. On the morning after the dance two cars, having in them Mexicans, were going along the road a few miles from where the dance took place. In the front car was the brother-in-law of deceased and several others. This car was seventy-five or one hundred yards in advance of the one occupied by Julian Rios, deceased, and some others. Deceased was sitting in the driver's seat of said rear car, by the side of Julian Rios, her husband. The testimony of appellant and that of the other witnesses differs widely. All the state witnesses testify that appellant came up, overtaking the cars occupied by the others, and when near the car in which Julian Rios and his wife were, that the latter pulled their truck out to the side of the road, and that as appellant approached he fired, shooting deceased with a Winchester, causing her immediate death. Appellant claimed that as he came up behind said car that Julian Rios turned in his seat and fired at appellant, who thereupon returned the fire. It appears from all the testimony that as soon as the occupants of the front car heard the shooting they came back and the brother of Julian Rios began shooting at appellant, who ran off and was later captured.

When the charge of the court was submitted to the appellant he excepted to the failure of the court to instruct the jury in consonance with the terms of Chap. 274, Acts Regular Session, Fortieth Legislature, wherein the lowest penalty for murder is fixed at two years instead of five. The charge of the court in this case told the jury that if they found appellant guilty to assess his punishment at death, or by confinement in the penitentiary for life, or for any term of years not less than five. It is insisted by appellant that the court erred, and that under the terms of Arts. 13 and 17 of our Penal Code he was entitled to have the jury told that if they convicted him they should fix his penalty at not less than two years. It is claimed by appellant that the terms of Chap. 274, supra, lessened or ameliorated the penalty for murder and that he should have had the benefit thereof. We would agree with appellant but for the fact that Sec. 3a of said Chap. 274, as amended and as now a part of said law, specifically provides as follows: "Provided, however,

that no offense committed prior to the taking effect of Chap. 274 of the General Laws of the Fortieth Legislature of 1927, shall be affected hereby whether an indictment has been returned or not, but in every such case the offender may be proceeded against and punished under the law as it existed prior to the taking effect of said Act, the same as if said Act had not been passed." It thus appears that by the express terms of the statute the punishment for homicides committed prior to the taking effect of Chap. 274, supra, was not ameliorated or made less by the passage of said Act but remained as it was under the law prior thereto. This being true of the law, and it appearing from the facts in this case that the offense herein, if any, was committed prior to the taking effect of Chap. 274, supra, then the trial court was correct in instructing the jury that in the event of conviction their verdict should fix a penalty of not less than five years. We have examined the authorities cited by appellant but in none of the cases referred to in same was there found a saving clause providing for the trial and punishment of those guilty of violations of the law as it was prior to its change, to be as under the former statute. This prevents the application to the instant case of any or all of said authorities.

We do not find any place where the court assumed in the charge that the offense was committed by appellant. The exception to the charge based on the proposition of such assumption is very general and points out no specific part. In every instance we find that the court submitted to the jury instructions based upon their finding appellant to be guilty of the homicide. However, we find in the statement of facts, and in the testimony of appellant himself the positive statement as follows: "I killed Tomasa with my gun. Got it here in Frio County." The undisputed testimony indicates that deceased was shot from the back. We find nothing in the testimony suggesting that she might have been killed by a shot from the brother of Julian Rios, who was in the front car.

Error is urged on the ground that the charge should have submitted the right of appellant to defend against an attack by Santiago Rios, as well as an attack by Julian Rios. While appellant claimed that at the time Julian attacked him, Santiago was also shooting, he does not undertake to say where Santiago was, nor that he was shooting at Santiago when he killed Tomasa, nor that he feared any attack from Santiago, nor that the acts or conduct of Santiago in anywise affected him or caused him to shoot when Tomasa was killed. In fact the con-

trary plainly appears. Julian Rios said he was in a truck, his wife Tomasa was on the seat by him, also his sister, and that his younger brother was in the back of the truck; that his mother, sister and three other brothers were in a Ford car, whose top was up, some eighty yards further up the road, both cars moving in the same direction. When appellant overtook his truck Julian said he turned same out to the right to let appellant pass, and that when appellant got near the end of witness' truck he fired at witness, the shot entering the back of Tomasa, killing her. When appellant fired at him witness said the car up the road stopped, and witness' brother, Santiago, jumped out with a rifle and at once fired at appellant and came running back down the road firing as he came; that appellant turned his car out to the left, jumped out of the car and ran off. Witnesses who were in the Ford car affirm that their first knowledge of the trouble was when they heard the shot back at Julian's truck. The sheriff of the county testified as follows:

"I made an examination of the physical facts at the place where the homicide occurred on the road, and we found four or five cartridges, one was a .250 Savage. That would fit Flugencio's gun. I think we found four other shells. We found them, to my best recollection, from Flugencio's car tracks it must have been forty or fifty feet where we found the first one, then three pretty close together—wasn't right together but close together, then one was found eighty steps from where the first shells was found."

This was corroborated by another disinterested witness, who swore:

"A man couldn't tell from the tracks how close Flugencio's car got to the other car before he turned, they were evidently both moving. I found one shell that belonged to this gun of Flugencio's in his car and I believe we picked up three shells of the 38-40 about sixty steps beyond where the two cars were stopped in the middle of the road. The nearest shell I picked up was about fifty yards from Flugencio's car."

Appellant, who was alone at the time of the shooting, in his car, testified:

"When I got near his car he commenced shooting at me with a pistol. When I saw that I didn't think I had a chance to get by him then I turned my car back in this direction to return and seeing that he was shooting at me, I grabbed my gun and shot at him. I shot at him at the time I turned my car."

Also later as follows:

"He shot the first shot from in the car and when I turned and after I shot the first shot he was down on the ground. I went at most, about fifteen yards after the shooting, before I got out of the car. I got out of the car because I was thinking he might shoot me from the rear."

He also said that he killed Tomasa with his gun; that he got it in Frio County. We also find him testifying as follows:

"The first shot Julian Rios fired, he was this way (indicating) and then is when I turned my car and shot my first shot and the time I jumped out, he was already out. When Julian jumped out of his car he was on the same side as my car, shooting with a pistol. At that time I had already shot the first shot and when I jumped out of the car and ran off I shot another shot."

The above facts seem to establish beyond cavil that unless reliance could be had by appellant upon an attack begun by Julian, in support of his claim of self-defense—he had none worth speaking of—for it is evident that Santiago, who was in the front car, shot immediately upon getting out of that car, his getting out resulting from hearing the shooting back at the truck of Julian Rios. The car Santiago was in was some eighty yards further up the road. Evidently Santiago ran down the road to a point from where he fired near his car, to a place where three more shells were found some sixty yards from Julian's truck, and then ran a little further and fired again. It must also be kept in mind that appellant said that he *shot at Julian* when Julian shot at him. He did not claim that he shot at Santiago or at Julian and Santiago, but affirmed that when Julian began the difficulty by shooting at him, appellant, he fired *at Julian.* If then he was given in the court's charge every right of self-defense, depending upon or arising out of an attack by Julian—we see no reason for believing that he would have benefited by a charge instructing upon his right of self-defense against an attack by Julian and Santiago. If the state's theory of this case be correct, appellant did not attack or shoot at Santiago when he killed Tomasa, but he shot at Julian who was sitting on the seat by Tomasa. If appellant's theory, as made by his own evidence, be looked to, it is that Julian shot at him, and he returned the fire, killing Tomasa, but that Santiago from a point up the road was also shooting at him, and that while he did not shoot at Santiago, nor claim that he shot at Julian because of what Santiago was doing or had done, or because he feared Santiago—still in some way the court should have charged the jury that he had the right of

self-defense against Santiago, when he fired the shot at Julian which killed Tomasa. We are forbidden by the express terms of Art. 666, C. C. P., to reverse cases for errors not by this court deemed of injury to the rights of the accused or to affect the fairness of the trial. If it be conceded in this case that based solely on the claim of appellant that Santiago from somewhere was shooting at the time he shot and killed Tomasa, and that this might have justified the court in charging that appellant had the right to defend against an attack by both, as well as one, still the record being barren of any suggestion that appellant fired the fatal shot because Santiago was shooting up the road somewhere, we deem the failure of the court to charge on self-defense against a joint attack entirely incapable of any injury, and, therefore, not to present reversible error. So believing, the judgment will be affirmed.

*Affirmed.*

## ON MOTION FOR REHEARING.

HAWKINS, JUDGE. — Upon original submission appellant invoked the benefit of Art. 13, P. C., which, in substance, is that when by the provisions of a subsequent law the prior punishment for an offense is ameliorated, an accused should be punished under the subsequent law unless he elect to receive the penalty prescribed by the law in force when the offense was committed. Because the Act of the Regular Session, Fortieth Legislature, Chap. 274, made the minimum punishment for murder two years' imprisonment, appellant insisted that he should have had the benefit of this ameliorated punishment. In our original opinion we stated that appellant's contention would be sound but for the fact that the Special Session of the Fortieth Legislature, Chap. 8, amended Sec. 3a of Chap. 274 of the Regular Session so that no offense committed prior to taking effect of Chap. 274 should be affected thereby. In his motion for rehearing appellant insists that the Act of the Special Session referred to was an amendment of Art. 13 of the Penal Code, and that as said article was not referred to in said Special Session Act, it was violative of Secs. 35 and 36 of Art. 3 of the Constitution, by reason of which Art. 13 was still in force, and that appellant was entitled to its benefits regardless of Chap. 8, Act of the Special Session, Fortieth Legislature. The said latter Act can in no respect be regarded as an amendment to, nor as an attempt to amend, Art. 13 of the P. C. Said Special Session Act was designed to prevent the operation of Art. 13 in prosecutions for murder when the offense occurred

before Chap. 274 of the Regular Session, Fortieth Legislature, became effective. Art. 13, P. C., remains unchanged and unimpaired and would be applicable where no saving clause intervened. We have had occasion to construe the effect of Chap. 8 of the Special Session upon Chap. 274 of the Regular Session in O'Pyle v. State, 298 S. W. 596, and in Flores v. State, 4 (2d) C. W. 43.

The motion for rehearing is overruled.

*Overruled.*