FLOYD E. CLARK *v.* STATE OF ARKANSAS

CR 73-83                                498 S.W. 2d 657

Opinion delivered September 4, 1973

*Nicholas Bierwirth,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *James W. Atkins,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant was arrested on the 29th day of September, 1970, and charged with the rape of his eight-year-old stepdaughter. On February 5, 1971, Mr. Henry Wilkinson was appointed to represent the appellant. On February 16, 1971, appellant, having previously entered a plea of not guilty, changed that plea to guilty. A jury impaneled to fix the punishment returned a verdict fixing the sentence at 75 years. The prosecuting attorney, pursuant to an agreement with defense counsel, had waived the death penalty. Appellant's first petition for relief under Criminal Procedure Rule 1, filed on April 22, 1971, was summarily denied. This motion was amended on August 14, 1972. The amended motion was denied after an evidentiary hearing held October 6, 1972. Appellant seeks reversal of the order denying this relief, relying upon the following points:

I. That appellant did not enter the plea of guilty at his trial with full knowledge of the consequences of the plea and should have been granted relief.

II. That the court erred in finding that appellant knowingly, intelligently and voluntarily waived his constitutional rights during the pretrial interrogation stage.

III. That the lower court erred in finding that appellant was effectively represented by counsel.

IV. That appellant was denied due process by the failure of the court to appoint counsel to represent appellant until four months after his arrest and the filing of the information.

V. That the court's instructing the jury on the law of parole prior to any request for such information denied appellant due process of law.

We shall discuss these points in the order stated.

## I.

Appellant contends that he was misled by his appointed counsel so that he believed that if he entered a plea of guilty, he would receive a sentence that would make him eligible for parole in not more than two years. He also complains the trial court took no steps to advise him of the actual consequences of the plea he entered. He contends that this alleged ignorance of the true consequences of his plea rendered it impossible that his plea was entered knowingly, intelligently and voluntarily. In support of this argument he calls our attention to the facts that he only completed the fifth grade in school, that his ability to read and write was very limited and that he had a long history of alcoholism.

The trial court found that: the guilty plea was not the result of any deception or coercion by either the deputy prosecuting attorney or appellant's court-appointed attorney; appellant entered his guilty plea with full knowledge of the impact thereof; at no time did appellant's court-appointed attorney threaten him with the death penalty but only advised appellant that this was a possible punishment, without undue emphasis thereon; and appellant chose to plead guilty of his own free and voluntary will to avoid the possible imposition of such a penalty.

Appellant testified that between the time Wilkinson was appointed and the time of the trial, he saw Wilkinson on a very regular basis, and Wilkinson led appellant to believe he was going to defend appellant strongly, but later informed appellant that there was nothing appellant could do to avoid being found guilty and that if he did not plead guilty he was certain to get the death penalty. Appellant further testified that on the last day before his trial, he decided he was not going to get any help and, since Wilkinson had told him that he could get a lighter sentence which would allow him to apply for parole in no more than two years, he decided to change his plea to guilty.

On the other hand, Wilkinson, called as a witness by appellant, testified that he told Clark that the offense

with which he was charged carried a penalty ranging from a minimum of 30 years to the death penalty as a maximum. According to his testimony, when the prosecuting attorney offered to waive the death penalty if Clark entered a plea of guilty, Wilkinson immediately advised Clark, telling him that, in the event he entered a plea of guilty, his punishment would range from 30 years to life imprisonment. He denied threatening Clark with the death penalty or telling him that a plea of guilty would result in his receiving a very light sentence on which he could be paroled in no more than two years. Wilkinson also testified that he informed Clark that the prosecuting attorney would try to get a life sentence upon a plea of guilty and that Wilkinson would try to get a 30-year sentence. According to Wilkinson, appellant's decision to plead guilty was reached several days after communication to appellant of the state's offer.

The case came on for trial prior to our acknowledgment in *O'Neal* v. *State,* 253 Ark. 574, 487 S.W. 2d 618, that the decision of the United States Supreme Court in *Furman* v. *Georgia,* 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972), rendered administration of the death penalty under our existing statutes unconstitutional. The entry of a plea of guilty in order to avoid the possibility of a death penalty is not, in and of itself, an involuntary plea. *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Brady* v. *United States,* 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). The question here is whether the guilty plea was entered intelligently and voluntarily with the advice of competent counsel. Insofar as the advice of counsel is concerned, the burden was upon appellant to show that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases. *Horn* v. *State,* 254 Ark. 651, 495 S.W. 2d 152; *Tollett* v. *Henderson,* 411 U.S. 258, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973). There was ample basis for a finding by the trial court that appellant had failed to meet his burden of overcoming the presumption of competence of counsel. We are certainly unwilling to say that the circuit judge was not justified in accepting the version of appointed counsel over that of appellant in finding that appellant was fully informed as to the impact of his plea of guilty and its potential

consequences. The record discloses that appellant affirmatively answered his attorney's open-court inquiry whether his plea to the charge was guilty. It would certainly be the better practice. for the trial judge, upon the entry of a plea of guilty, to address inquiries to the defendant himself in order to establish beyond doubt that the plea is knowingly, intelligently and voluntarily made and to inform the defendant of the possible consequences of such a plea. His failure to do so in a particular case does not render the plea and the sentence thereon subject to collateral attack for constitutional infirmities, if the record otherwise affirmatively discloses or it is otherwise shown that the plea was entered understandingly and voluntarily.

## II.

Appellant contends that a statement given by him to the deputy prosecuting attorney and police officers as a result of pretrial interrogation was involuntary because he had not knowingly, intelligently and voluntarily waived his constitutional guaranties against self-incrimination and of right to counsel. His argument is based largely upon his contention that his waiver could not have been knowingly and intelligently made because he did not understand, and was not capable of understanding, the explanation of these rights. He contends that he was unable to understand because of his deep distress resulting from the accusation made against him, his inability to read or write and his affliction with alcoholism for a great period of time prior to his arrest. Appellant argues that his alcoholism so affected his mental processes that he was not able to understand or appreciate the meaning of what was taking place around him.

In support of this allegation, Clark testified that he was half drunk when arrested and taken to the jail, where he was interrogated by Mr. Fletcher Long, Jr., deputy prosecuting attorney and Sgt. Billy Joe Baker, a state police investigator. He admitted having signed two papers, which he said were not explained to him. Clark said he was led to believe that he was helping himself by giving a statement of events of which he knew, that Mr. Long was the best lawyer he could have, that the signing of the waiver of his rights was just a technicality. He admitted

that the waiver was read to him, but testified that he was not told that he had a right to remain silent, that anything he said could be used against him in court or that he had a right to advice of counsel before interrogation. He expressed the belief that he signed the statement before he signed the waiver, but professed inability to remember who explained the waiver to him and attributed his memory difficulties to his drinking problem. He explained his failure to raise any question about the truth or the voluntary nature of his statement to advice he claimed that his lawyer had given him to keep his mouth shut unless he wanted to get the death penalty. He admitted that he understood the content of the statement. His mother testified that Clark called her from the jail and "told me he did it."

Clark's testimony was contradicted by Long who testified that he read and explained all of the constitutional rights recited in Clark's waiver to Clark and expressly asked Clark if he understood what had been read. According to Long, Clark responded that he wanted to sign the waiver and to talk about what had happened. Thereafter, Long said, Clark told a totally exculpatory story but when confronted with evidence found in his automobile and the fact that this statement failed to account for a period of an hour and a half, Clark then told the story contained in the statement. Long attributed to clerical error the recording of the time of the signing of the waiver as five minutes later than the commencement of the statement.

Although there was no pretrial hearing to determine the voluntariness of Clark's confession, the record of the trial, introduced as an exhibit by Clark, discloses that Baker testified that he read the waiver to Clark after it had been explained to him by the deputy prosecuting attorney and before it was signed or any statement of Clark was taken.

This question could and should have been presented to the court during the course of the trial. See *Ballew v. State,* 249 Ark. 480, 459 S.W. 2d 577; *Cox v. State,* 243 Ark. 60, 418 S.W. 2d 799. Wilkinson's version of the failure to do so is based upon his conclusion that the statement could not be excluded after he had interviewed the deputy

prosecuting attorney and the officers who knew the circumstances under which it was taken. Of course this statement was offered in evidence after the appellant had decided to enter a plea of guilty. When we consider this factor along with the disclosure from the record of trial that Clark elected to testify and, instead of repudiating his confession, attributed his conduct to his drinking, it appears that the circuit court was justified in finding against appellant on this point. Furthermore, a plea of guilty is not rendered subject to collateral attack merely because the accused's attorney may have, on retrospective consideration, erroneously concluded that a confession was admissible in evidence, if the attorney's advice was within the range of competence demanded in criminal cases. *McMann* v. *Richardson,* 397 U.S. 759, 90 S. Ct. 1441, 25 L. Ed. 2d 763. See also, *Tollett* v. *Henderson,* supra.

### III. and IV.

Appellant first argues that the assistance of counsel was ineffective because a lawyer was not appointed to represent him until approximately four months after his arrest. The record discloses that soon after his arrest, appellant was committed to the Arkansas State Hospital for observation. Although we feel that it would be much the better practice for the court to appoint counsel for an indigent defendant upon his first appearance before the trial court, appellant has not pointed out any prejudice that resulted from the lapse of time between his arrest and the appointment of counsel for him. His suggestion that he was prejudiced and deprived of due process of law by his commitment to the State Hospital for examination as to his mental competency and legal responsibility for his acts is wholly without merit.

In support of point III, Clark contends that Wilkinson told him so frequently that he was certain to receive the death penalty that he became intimidated by the possibility, and that Wilkinson assured him if he did plead guilty he would receive a sentence permitting parole after two years. He also asserts that: no attempt was made by Wilkinson to prevent the introduction of the alleged confession; Wilkinson made no request that rags found in

Clark's automobile be analyzed to determine the exact nature of substances thereon which were said to have been blood and semen; Wilkinson assured him that he would not be cross-examined when he took the stand to testify; Wilkinson prejudiced his cause by examining appellant about his history of alcoholism when he testified; Wilkinson failed to cross-examine the alleged victim when she testified and ignored his desire that a prospective juror be peremptorily challenged because of some previous trouble between him and the prospective juror.

In addition to the recitations of testimony set out in discussions of other points, it should be noted that Wilkinson explained his waiver of cross-examination of the young victim. He said that after he observed that her detailing of the particulars of the offense had produced a reaction by the jurors adverse to Clark, he felt that Clark's best interests were served by permitting the child to leave the witness stand and to be taken out of the vision of the jury as soon as possible. He also attributed his failure to challenge some of the evidence to the fact that Clark had entered his plea of guilty and had, before the offer of waiver of the death penalty was made, admitted to Wilkinson that he had raped the girl and had confessed to it. The record also discloses that Wilkinson exercised all the peremptory challenges appellant was allowed.

Insofar as the trial procedures are concerned, the most that could have been said of counsel's actions, if appellant's version were accepted, was that there were errors, omissions, mistakes, improvident strategy or bad tactics. None of these will suffice even to require an evidentiary hearing on an allegation of ineffective assistance of counsel, much less justify postconviction relief from a sentence. *Leasure* v. *State*, 254 Ark. 961, 497 S.W. 2d 1. All of the matters asserted in support of this point, except that pertaining to intimidation or coercion, are matters which are ordinarily within the realm of counsel's judgment in the conduct of his client's defense and therefore inappropriate bases for postconviction relief for ineffective assistance of counsel. *Leasure* v. *State*, supra. We have heretofore treated the matter of coercion by counsel. We find no error in the court's finding that appellant's right to the effective assistance of counsel had been fully

protected, and that his rights were fully protected before, during and after his trial. A charge of this sort can prevail only if the acts or omissions of the attorney result in making the proceedings a farce and a mockery of justice, shocking the conscience of the court, or if the representation is so patently lacking in competency or adequacy that it becomes the duty of the court to be aware of and correct it. *Leasure* v. *State,* supra. Nothing in this record indicates that any such state of affairs prevailed.

While we deem allegations in appellant's petition not argued here to have been waived, we note that the attorney explained his failure to subpoena character witnesses suggested to him by appellant by stating he found these persons themselves were of questionable reputation and very vulnerable to attack as character witnesses so that their testimony would be detrimental rather than advantageous. Furthermore, no request of appellant to Wilkinson to appeal the case has been pointed out to us and, in view of the strong case against appellant, we are persuaded that the idea of appeal is a post-confinement afterthought, which may have been prompted by the fact that the death penalty was no longer a hazard.

## V.

Appellant's contention that the court's instructing the jury on the law of parole denied him due process of law is also totally without merit. Criminal Procedure Rule 1 is not devised as a substitute for appeal or as a method of review of mere error in the conduct of the trial. It is designed solely to afford a method for collateral attack upon a judgment and sentence upon grounds specified in the rule. *Thacker* v. *Urban,* 246 Ark. 956, 440 S.W. 2d 553. Furthermore, the procedure followed by the trial court in giving the instruction in question was not disapproved by this court until well after the date of this trial. *Andrews* v. *State,* 251 Ark. 279, 472 S.W. 2d 86. In that case, decided some time after appellant's trial, we reviewed previous decisions approving such instructions. We concluded that we would no longer give approval to this procedure, but not on the grounds of violation of due process or other constitutional grounds. We had just such cases as this in mind when we said:

We recognize that appeals may presently be pending where the court, in following previous opinions, may have violated the present admonition. We therefore state that the matter last discussed in this opinion, being only a matter of procedure, shall not be retroactive, but shall become effective when this opinion becomes final.

It should also be noted that when a criminal defendant has entered a plea of guilty after he has had the advice of counsel, he may not thereafter even raise claims relating to deprivation of constitutional rights prior to the guilty plea, except by showing that his plea was not voluntarily and intelligently entered because the advice he received from counsel was not within the range of competence demanded in criminal cases. *Tollett* v. *Henderson,* supra. Appellant, as previously indicated, has failed to make the required showing.

Since we find no basis for reversal on the grounds argued here, the judgment is affirmed.