Jack STANLEY III *v.* STATE of Arkansas

CR 75-46                                        527 S.W. 2d 613

Opinion delivered September 8, 1975

*Patrick Dale O'Rourke,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Gary Isbell,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Stanley seeks post-conviction relief from his sentence to life imprisonment for first degree murder of his step-father. The judgment of conviction was appealed to this court. See *Stanley* v. *State,* 248 Ark. 787, 454 S.W. 2d 72. Permission to proceed under Criminal Procedure Rule 1 was granted by this court on March 4, 1974. Stanley's petition was based upon his contention that a pretrial confession made by him was improperly admitted into evidence because there was no knowing and intelligent waiver of his privilege to remain silent and to have the advice of counsel before making any statement. Concededly, no objection on this ground to the introduction of appellant's statement was made at his trial. No assertion was made on appeal that this evidence was constitutionally infirm. The circuit court proceeded under Criminal Procedure Rule I (C) in denying Stanley's petition. We affirm.

As a basis for his present contention, Stanley alleged that: he was 14 years of age and a student in the ninth grade at the time; he was not given the opportunity to consult with his mother and no attempt was made by the police to obtain her permission to question him; the officer interrogating him informed him that if he gave a statement nothing would happen to him other than being sent to the state hospital.

The trial judge entered extensive and detailed findings of fact and conclusions of law, after having reviewed the transcript of Stanley's trial. This same judge presided at that trial. The circuit judge found considerable evidence in the transcript of the trial to support a finding that the statements made by Stanley were freely and voluntarily made and that he was possessed of adequate intellectual capacity to knowingly and intelligently waive his right to remain silent.

Certain statements in the state's brief in the court below were quoted in the circuit judge's findings because of their aptness. For the same reason, we quote a substantial part of those adopted by him, viz:

> The petitioner's defense at the trial was insanity. In view of the overwhelming evidence against the petitioner it is clear that insanity was the only defense reasonably available to the petitioner. A careful examination of the petitioner's written statement now under attack shows that it complements the testimony of defense witness, Dr. Donald Chambers, the psychiatrist who testified to the petitioner's insanity. In the written statement the petitioner states that since his grandmother died he had missed her so much and would get a feeling of 'kill, kill, kill' in his head. At the end of the petitioner's statement he talks about what was going through his mind at the time his mother arrived at home and after he heard Detective Davis say that his stepfather was dead. He said, "I don't know why I did it. There was something in me that just says 'kill, kill, kill' ".
>
> On direct examination Dr. Donald Chambers testified that the death of petitioner's grandmother created severe depression in the petitioner. The petitioner's statement is consistent with that diagnosis. Dr. Chambers went on to testify that the death of petitioner's grandmother produced homicidal preoccupation and ruminative thinking which occurred several weeks prior to the shooting of Mr. Reynolds. Dr. Chambers described ruminative thinking as a few thoughts which just continually circle in the mind; one single idea, one single effect attached to the idea. The portion of the petitioner's statement where he said he had the thought "kill, kill, kill" certainly complements the testimony of Dr. Chambers. A complete review of the record in this case shows why defense counsel did not ask for a Denno hearing and did not object to the introduction of the petitioner's written statement at the time of trial. This was obviously a part of defense counsel's strategy in interposing the defense of insanity.
> *****

The record in the case at bar as reviewed in it[s] entirety is replete with evidence of the petitioner's guilt. The admissibility of much of the evidence was not subject to reasonable attack by the defense counsel. In the face of all of these things defense counsel was forced to develop a strategy for the trial of the case. The only reasonable solution available was to interpose the defense of insanity. The statement now questioned by the petitioner was self-serving in many respects in that it complemented the psychiatric testimony offered on behalf of the petitioner.

It is true that petitioner's defense counsel did not object to the admissibility of the statement now under attack, but not because of incompetence. On the contrary, the failure to object came about after careful preparation for trial and the development of prudent trial strategy by counsel. During the cross examination of Detective Davis, defense counsel very alertly brought out that the portion of the statement which complemented the psychiatric testimony was in the own words of the petitioner rather than in the words of the detective. This indicates thorough preparation and trial by preconceived strategy by laying the groundwork for the insanity defense through the state's very first witness. This strategy is in no way shocking to the conscience nor does it make a mockery of justice.

The record of the trial sustains these statements. While we might not be fully justified in saying that the *only* reasonable strategy available was the defense of insanity, we can say with assurance that it appears to have been the most reasonable course, and that it was pursued with unusual vigor by appellant's appointed counsel, both in the trial court and the appellate court. We may add that this attorney also sought to exclude certain evidence which he considered inflammatory on the basis that Stanley conceded at the trial that he had committed the act of fatally shooting his stepfather. Expert witnesses on the defense of insanity related incriminating statements of Stanley to them on direct examination and at least one of them included the gist of a statement to a police officer as a factor in evaluating Stanley's mental

condition. Thus it is clear that this attorney sought to use the incriminating statements of Stanley for advantageous purposes in support of the plea of insanity and in an effort to exclude damaging evidence.

Although the circuit judge felt that an attack on the competency and effectiveness of counsel was inherent in the allegations of Stanley's petition, we consider this to be no more than peripheral. It is quite significant to us that neither petitioner, his trial court counsel, nor his attorney on appeal make any such assertion. But we do agree that, in order for Stanley to succeed on his petition it would be necessary that he make such a showing. The statement on his behalf most nearly approaching such an argument is the statement of appellant's brief here that the record is devoid of evidence to show that Stanley joined with his attorney in waiving his right to challenge the "confession". In determining a petitioner's entitlement to a hearing, however, the court is limited to the allegations of the petition before it. In this case, the obvious strategy employed, the obvious wisdom of that strategy, and the fact that appellant has never sought to assert any reason for his not having made any objection to the introduction of his statements in the trial court on the grounds now asserted — particularly after three members of this court voted to deny him permission to proceed on the present petition for failure to do so — are sufficient basis for the denial of an evidentiary hearing. See *Clark* v. *State*, 255 Ark. 13, 498 S.W. 2d 657; *Sheppard* v. *State*, 255 Ark. 40, 498 S.W. 2d 668; *Coleman* v. *State*, 257 Ark. 538 (27 Jan. 1975), 518 S.W. 2d 487.

The judgment is affirmed.