DeWayne HULSEY *v.* STATE of Arkansas

CR 76-125                                              595 S.W. 2d 934
Supreme Court of Arkansas
Opinion delivered March 31, 1980
Rehearing denied June 9, 1980

*Latham & Watkins; Reed E. Hundt* and *Patrick T. Seaver,* for petitioner.

*Steve Clark,* Atty. Gen., by: *Ray E. Hartenstein,* Asst. Atty. Gen., for respondent.

GEORGE ROSE SMITH, Justice. In November, 1975, the petitioner, DeWayne Hulsey, was convicted of capital felony murder in the death of John Easley, Jr., a service station attendant in St. Francis county. According to the proof at the trial, Hulsey killed Easley, in the course of robbery, by shooting him seven times while Easley was unarmed and comparatively helpless. The jury imposed the death sentence. We upheld the conviction and the sentence, rejecting many asser-

tions of reversible error. *Hulsey* v. *State,* 261 Ark. 449, 549 S.W.2d 73 (1977), cert. den. 439 U.S. 882, 99 S. Ct. 220, 58 L. Ed. 2d 194 (1978).

On January 24, 1980, Hulsey filed the present petition for postconviction relief under Criminal Procedure Rule 37.2, seeking permission to proceed further in the circuit court of St. Francis county. The petition is unusual in that it does not raise any questions of fact nor ask for any sort of evidentiary hearing in the trial court. To the contrary, counsel readily conceded at the oral argument that the petition raises only questions of law and that the petitioner does not propose to offer any testimony with respect to those questions.

In most respects this petition misconceives the purpose of Criminal Procedure Rule 37 and of its predecessor, which was adopted in 1965 as Criminal Procedure Rule 1. 239 Ark. 850a. This postconviction remedy was not intended to provide a method for the review of mere error in the conduct of the trial or to serve as a substitute for appeal. *Clark* v. *State,* 255 Ark. 13, 498 S.W. 2d 657 (1973). As the Rule itself states, it affords a remedy when the sentence was imposed in violation of the Constitution or laws of the United States or of this state or "is otherwise subject to collateral attack." Rule 37.1; *Swisher* v. *State,* 257 Ark. 24, 514 S.W. 2d 218 (1974); *Thacker* v. *Urban,* 246 Ark. 956, 440 S.W. 2d 553 (1969); *Clark* v. *State,* 242 Ark. 584, 414 S.W. 2d 601 (1967). In the case at bar the petitioner for the most part seeks to use Rule 37 as a basis for filing what is in substance a petition for rehearing, almost three years after the delivery of our opinion on the original appeal. Moreover, the present petition is based entirely upon the record that was before us on that appeal and seeks to raise questions that could have been presented to us then, had they been properly raised below.

In one respect, the petition may be proper and timely. That is, it asserts that the original death sentence was void, because one of the prospective jurors, Mary L. Creamer, was excused in violation of the rule announced in *Witherspoon* v. *Illinois,* 391 U.S. 510, 88 S. Ct. 1720, 20 L. Ed. 2d 776 (1968). There is language in that case, and in the later case of *Boulden* v. *Holman,* 394 U.S. 478, 89 S. Ct. 1138, 22 L. Ed. 2d 433 (1969), suggesting that a death sentence cannot be permitted

to stand if a juror was excused in violation of the *Witherspoon* principle, which is: A venireman's opposition to capital punishment does not disqualify him unless he would automatically vote against the imposition of capital punishment no matter what the trial might reveal. If the sentence now before us is void, then a collateral attack is expressly permissible under Rule 37.1 and may be initiated, as here more than three years after the defendant's commitment. Rule 37.2 as amended; Ark Stat. Ann., Vol. 4A (Supp. 1979).

It does not appear, however, that the trial court's decision to excuse Mrs. Creamer for cause was a violation of *Witherspoon.* This juror equivocated repeatedly about her willingness to vote for or against the death penalty, but her final position was expressed in her answer to the prosecuting attorney's last question to her:

Q. Now, what I'm trying to find out, even though you think he is guilty, would you automatically vote against the imposition of the death penalty without regard to any evidence that might develop in the trial of this case?

A. I believe I would, yes, sir, because I don't want to take a life.

The juror was then excused, without objection by the defense.

The trial judge had the opportunity to observe the juror as she answered questions on voir dire. The judge was in a position to weigh her somewhat contradictory assertions in order to determine, as he did, whether she was qualified under the rule of *Witherspoon.* We find that the trial judge was justified in excusing the juror.

The petitioner presents a number of other quesions that either were passed upon in our first opinion or might have been raised at the trial or upon the record on the first appeal. Among the questions not expressly decided on the first appeal, the principal ones now argued are: (1) The Eighth and Fourteenth Amendments were violated by the jury's consideration of pecuniary gain as an aggravating circumstance

after they had already found Hulsey guilty of felony murder in the perpetration of robbery; (2) the prosecutor's argument about the brutality of the crime presented an impermissible aggravating circumstance to the jury; (3) Act 438 of 1973, § 12, under which Hulsey was convicted, was unconstitutional in that it did not expressly permit the jury to consider every possible mitigating circumstance (even though the court's instructions permitted the jury to consider mitigating circumstances other than those listed in the statute, and the jury actually found one such circumstance); and (4) the case should have been submitted to the jury under Act 280 of 1975, § 1302 (Ark Stat. Ann. § 41-1302 Repl. 1977), which required the jury to find beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating ones (even though that act did not become effective until January 1, 1976, which was after Hulsey's trial).

All these questions, and doubtless scores of others, might have been raised at the trial and thereafter on the first appeal, but they were not. Although they are argued as constitutional questions, they do not raise issues so fundamental as to render the sentence and the judgment void and open to collateral attack. Such constitutional questions are waived if not raised in accordance with the controlling rules of procedure. *Moore* v. *Illinois,* 408 U.S. 786, 92 S. Ct. 2562, 33 L. Ed. 2d 706 (1972); *Stembridge* v. *Georgia,* 343 U.S. 541, 72 S. Ct. 834, 96 L. Ed. 2d 1130 (1952); *Williams* v. *Edmondson,* 257 Ark. 837, 250 S.W. 2d 260 (1975); *Orman* v. *Bishop,* 245 Ark. 887, 435 S.W. 2d 440 (1968). In this court, contentions not argued by the appellant—in this instance on the first appeal—are waived. *Sarkco* v. *Edwards,* 252 Ark. 1082, 482 S.W. 2d 623 (1972). Judgments in criminal cases must have stability and finality, else they could never be carried into effect. Under our long established procedure it is simply too late for the present contentions to be raised.

Petition denied.

Supplemental opinion on denial of rehearing
delivered June 9, 1980

GEORGE ROSE SMITH, Justice. The petitioner has filed a detailed petition for rehearng and supporting brief, devoted for the most part to a reargument of points already made. We find no merit in the petition, but two of the points call for some additional discussion.

First, petitioner insists that we have failed to follow Supreme Court decisions holding that a prospective juror's statement of "belief" that he would vote against the imposition of the death penalty is not sufficient cause for his exclusion from a jury for cause. it is argued that Mrs. Creamers's statement that she "believed" that she would automatically vote against the death penalty was not a positive statement, in view of her voir dire examination as a whole.

We disagree. It seems perfectly clear that Creamer did not at first understand that the jury would have a choice between the death penalty or life imprisonment. Instead, she thought that a finding of guilty would require the death sentence. Under that misapprehension, she stated that if she believed the defendant to be guilty she would vote for the death penalty, "but I just wouldn't want to vote for it." When, however, it was explained to her that the jury would have a choice, she said: "Oh." She then replied, in response to the question whether she would automatically vote against the death penalty regardless of the evidence: "I believe I would, yes sir, because I don't want to take a life." There is no uncertainty in that reply, which gives a positive answer, "yes, sir," and adds the reason for her position.

Second, it is argued that if we reject without discussion the petitioner's various "constitutional" arguments, mentioned in our original opinion, then the petitioner has received ineffective assistance of counsel and must be permitted to amend his petition to seek relief on that ground.

No authority is cited for this argument, nor is any authority needed to answer it. Within the vague contours of "due process of law," every contention can be framed as a constitutional right. If, for example, hearsay testimony about an immaterial question is introduced without objection, it can be asserted that a conviction based upon such testimony is a denial of due process of law. In the case at bar counsel have had about three years since our original opinion, delivered April 11, 1977, to comb the record for some semblance of prejudicial error. No violation of any fundamental constitutional right has been discovered. The petitioner appears to have been competently represented by counsel and to have received a fair trial in every respect. We are now asked to declare that trial counsel should have anticipated the frail and insubstantial constitutional questions that are now being urged three years later and should have interposed appropriate objections at the trial. If that principle were adopted, there could never be any end to a criminal prosecution in the state courts, much less to the succession of appeals to the federal courts that can be expected to follow. As we said in our first opinion on this appeal, it is simply too late for the present contentions to be raised.

Rehearing denied.

MAYS, J., would grant the rehearing.

RICHARD L. MAYS, Justice, dissenting. In *Witherspoon* v. *Illinois,* 391 U.S. 510, rehearing denied, 393 U.S. 898 (1968), the United States Supreme Court held that in capital cases only jurors who are *unequivocally* opposed to the imposition of the death penalty may be excused for cause. During petitioner's trial in which the death penalty was imposed Mrs. Creamer, a prospective juror, was excluded by the court during voir dire when she said that she "believed" that she would automatically vote against the death penalty. I view Mrs. Creamer's response as equivocal, especially in the context of her previous statements suggesting that she could vote for the death penalty under appropriate circumstances. Therefore, applying the principle of *Witherspoon,* Mrs. Creamer should not have been excluded. I would grant the rehearing requested by petitioner.