Charles Martin NEAL *v.* STATE of Arkansas

CR 75-115                                  605 S.W. 2d 421

Supreme Court of Arkansas

Opinion delivered September 29, 1980

444

JOHN A. FOGLEMAN, Chief Justice. Petitioner Charles Martin Neal was sentenced to death by electrocution by the Circuit Court of Pulaski County on May 20, 1975, having been found guilty of capital felony murder. He appealed his conviction and sentence to this court. The judgment was affirmed by this court on December 22, 1975, and Neal's petition for rehearing was denied January 26, 1976. *Neal* v. *State*, 259 Ark. 27, 531 S.W. 2d 17. Our mandate went to the Governor on April 15, 1977. Neal's petition for certiorari was granted by the United States Supreme Court and the judgment was vacated and the cause remanded to this court for consideration in the light of *Gregg* v. *Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed. 2d 859 (1976); *Proffit* v. *Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed. 2d 913 (1976); *Jurek* v. *Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed. 2d 929 (1976); *Woodson* v. *North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed. 2d 944 (1976); and *Roberts* v. *Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed. 2d 974 (1976). See *Neal* v. *Arkansas*, 429 U.S. 808, 97 S.Ct. 45, 50 L.Ed. 2d 69 (1976). We adhered to the views expressed upon our first consideration of the appeal and again affirmed the judgment on March 28, 1977. *Neal* v. *State*, 261 Ark. 336, 548 S.W. 2d 135. Certiorari was denied by the United States Supreme Court on October 3, 1977, at 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed. 2d 158.

Neal filed his petition for permission to proceed under Criminal Procedure Rule 37 on June 9, 1980. This was more than three years after Neal was committed, and would be too late under Rule 37.2 (c), Arkansas Rules of Criminal Procedure, Ark. Stat. Ann. Vol. 4A (Supp. 1979), unless the ground asserted would be such as to render the judgment against Neal absolutely void, except for the extended period of time necessary for the disposition of the direct appeal in this case.

In his petition, appellant asserts the following grounds for postconviction relief:

1. Ineffective Assistance of Counsel.
Appellant's attorneys at the trial and on direct appeal did not

(a) adequately prepare his defense;
(b) object to the introduction of evidence;
(c) appropriately advise petitioner concerning his plea of not guilty by reason of insanity;
(d) cross-examine vigorously;
(e) present effective opening or closing arguments or otherwise provide petitioner the standard of performance that was his constitutional due.

2. The 1973 death penalty statute as applied "violated" *Lockett* v. *Ohio*, 438 U.S. 586, in that it excessively limited consideration of mitigating circumstances.

3. The only aggravating circumstances found to exist, "pecuniary motive," was defined arbitrarily, capriciously and vaguely in violation of *Godfrey* v. *Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed. 2d 398 (1980).

4. There was no explicit jury finding beyond a reasonable doubt that petitioner deliberately or intentionally committed a homicide.

5. The standard for balancing aggravating and mitigating circumstances established by the Arkansas Legislature on March 3, 1975, should have been applied to petitioner's sentencing hearing.

6. Eight jurors were excused for cause in violation of *Witherspoon* v. *Illinois*, 391 U.S. 510, reh. den, 393 U.S. 898 (1968).

7. Petitioner's confession was permitted to be introduced into evidence despite its being the result of coercion.

Petitioner and his counsel have unduly complicated the consideration of his petition by a misconception of proper procedure under Rule 37. His petition states, for the most part, only generalities and conclusions. This would in the ordinary case result in a summary denial of permission to proceed under the rule on grounds so stated. Petitioner's counsel have proceeded on the misbegotten idea that specific allegations may be withheld from his petition but supplied in a memorandum of points and authorities, filed in support of the petition. Because this is a death penalty case, we will, in this case, but not hereafter, endeavor to consider the facts stated in the petition and memorandum as if they, considered together, constituted the allegations of the petition. We will not consider any grounds for relief not stated in the petition.

Neal and his attorneys also seem to have a total misconception of the purpose and role of Rule 37. It is not meant to function as a substitute for appeal, as a method of review of mere error in the conduct of the trial, or as a second opportunity to petition for a rehearing. *Hulsey* v. *State*, 268 Ark. 312, 595 S.W. 2d 934; *Austin* v. *State*, 264 Ark. 318, 571 S.W. 2d 584; *Clark* v. *State*, 255 Ark. 13, 498 S.W. 2d 657. It is not intended to permit the petitioner to again present questions which were passed upon on direct appeal. *Hulsey* v. *State*, supra. Nor does it permit a petitioner to raise questions which might have been raised at the trial or on the record on direct appeal, unless they are so fundamental as to render the judgment void and open to collateral attack. *Hulsey* v. *State*, supra.

One point that was raised and disposed of on the first appeal was that jurors were excused by the trial court in violation of *Witherspoon* v. *Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed. 2d 776 (1968). We considered this question on direct appeal and held against appellant in *Neal* v. *State*, 259 Ark. 27, 531 S.W. 2d 17, so this point is not a ground for relief under Rule 37. The basic question raised is not different, but petitioner seeks to make the argument that a "death qualified" jury is per se unconstitutional, relying upon *Grigsby* v. *Mabry*, 483 F.Supp. 1372 (E.D. Ark., 1980), now pending on appeal in the Eighth Circuit Court of Appeals. With all due respect, we simply do not agree with the theory underlying the federal district court's opinion. If jurors who

would not impose the death penalty under any circumstances are not excluded for cause, imposition of the death penalty would be haphazard. We adhere to the views we have expressed in *Grigsby* v. *State*, 260 Ark. 499, 542 S.W. 2d 275 and *Venable* v. *State*, 260 Ark. 201, 538 S.W. 2d 286. These views are fortified by the decision of the United States Supreme Court in *Lockett* v. *Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed. 2d 973 (1978), where arguments similar to those advanced by petitioner here were rejected.

We also considered and rejected the argument that the aggravating circumstance found to exist by the jury was unconstitutionally vague in appellant's direct appeal. *Neal* v. *State*, 259 Ark. 27, 531 S.W. 2d 17. It is extremely difficult to understand an argument that the words "pecuniary" or "motive" are vague when considered either separately or in combination. Of course the words were "pecuniary gain" rather than "pecuniary motive." We do not see how the decision in *Godfrey* v. *Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed. 2d 398 (1980), holding that the words "outrageously or wantonly vile, horrible or inhuman" are unconstitutionally vague, has any bearing whatever on the issue here, as petitioner suggests.

The question of admissibility of petitioner's confession was considered on direct appeal. We reviewed the entire record on the question and concluded that we could not say that the trial court's finding that petitioner's confession was voluntary was clearly erroneous or against the preponderance of the evidence. *Neal* v. *State*, 259 Ark. 27, 531 S.W. 2d 17.

What we have said disposes of petitioner's grounds which we have numbered. We will first consider those grounds alleged which clearly afford no basis for proceeding under Rule 37.

2. Petitioner argues that the jury was limited to consideration of only five mitigating circumstances in the sentencing phase of the trial. He contends that the Eighth and Fourteen Amendments were violated because the sentencing jury was precluded from considering all aspects of petitioner's character or record or any of the circumstances of

the offense that petitioner proffers as a basis for a sentence less than death, relying upon *Lockett* v. *Ohio*, supra. In that case, a four-judge plurality of the United States Supreme Court said:

> We are now faced with those questions and we conclude that the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death. \*\*\*

No other justice joined in that part of the opinion. Two justices rejected it. As Justice White pointed out, only a plurality held that the sentencer may constitutionally impose the death penalty only as an exercise of his unguided discretion after being presented with all circumstances which the defendant might believe to be conceivably relevant to the appropriateness of the penalty for the individual offender.[1] The judgment for reversal resulted from concurrence in the judgment by Justice White and two other justices. The Ohio statute considered in *Lockett* was quite unlike the Arkansas statute applied in Neal's trial. That Ohio law *required* a trial judge to impose the death penalty unless he found by a preponderance of the evidence that (1) the victim had induced or facilitated the offense, (2) it was unlikely that Lockett would have committed the offense but for the fact that she was under duress, coercion or strong provocation or (3) the offense was primarily the product of the accused psychosis or mental deficiency. The statute under which appellant was tried was materially different. It permitted evidence in the sentencing stage as to any matters relevant to sentencing. Ark. Stat. Ann. § 41-4710 (c) (Suppl. 1973). Under that act [Ark. Stat. Ann. § 41-4701 et seq (Supp. 1973)], the jury was not compelled to impose the death sentence whenever it found aggravating circumstances but no mitigating circumstance, unless it also found that sufficient aggravating

---

[1] Separate opinion, concurring in part and dissenting in part. 438 U.S. 586, 98 S. Ct. 2981, 57 L. Ed. 2d 1010 (1978).

circumstances existed beyond a reasonable doubt to justify a sentence of death.

We find no merit in appellant's argument that the requirement of unanimity for a jury finding of a mitigating circumstance rendered the verdict and sentence unconstitutional. We find nothing in the instruction given that related to the burden of proof of mitigating circumstances, if that matters. Not only do we find no merit in these contentions, these questions might have been raised at the trial and thereafter on the first appeal, but were not. It is too late for these contentions to be raised. *Hulsey* v. *State*, 268 Ark. 312, 595 S.W. 2d 934.

4. Petitioner argues that the sentence was invalid because there was no specific finding by the jury that Neal deliberately and intentionally killed the victim. The jury did find appellant guilty of a capital felony murder which was the unlawful killing of a human being committed by a person engaged in the perpetration of a robbery. It also found that there was not a mitigating circumstance on the ground that the capital felony had been committed by another person and the defendant had been an accomplice or his participation was relatively minor. In the direct appeal, we stated:

> *** Appellant, aided by another man during the robbery of a service station attendant, bound the victim's hands and feet and then shot him. After leaving the station they returned a short time later and, upon discovering the wounded attendant using the phone, the appellant shot him again. Death resulted from a total of seven pistol wounds.

Upon reconsideration, we added:

> *** This robbery was calmly and deliberately planned and executed by Neal and his companion. The appellant and his accomplice first drove around breaking windows in several stores in order to set off burglar alarms, so the police would be diverted to answer these alarms in another area. The jury would have been justified in the belief that Neal was the executioner and

that Neal fired the first, last and most of the other shots into the body of the sole attendant at the service station where the robbery was carried out. The victim was first shot when he was on the floor in a bay in the service station after he had been bound at the wrists and ankles by Neal. Seven shots were fired into his body and each of the wounds was potentially lethal. A witness testified that Neal had told him that he shot the man seven times. Both .22 caliber and .38 caliber bullets were recovered from the victim's body. There was evidence tending to show that Neal had possession of both .22 and .38 caliber weapons during the robbery and that he had obtained the .38 caliber weapon for use in the robbery. The accomplice testified that it was Neal who went into the station and finally dispatched the helpless attendant, when the two robbers drove back to check on the situation of the service station and saw the attendnt using the telephone.

Appellant relies principally upon the separate opinions of Mr. Justice White and of Mr. Justice Blackmun in *Lockett* v. *Ohio*, supra. The opinion of Justice Blackmun does not support petitioner's argument. Justice Blackmun's position was that the Ohio judgment improperly provided the death sentence for one who only aided and abetted a murder, without permitting any consideration by the sentencing authority of the extent of her involvement or the degree of her *mens rea* in the commission of the homicide. In this case, however, the jury could have found that the capital felony was committed by another person and the defendant was an accomplice or his participation was relatively minor, but did not do so.

Mr. Justice White joined in the judgment in *Lockett* because he felt the Eighth Amendment is violated by the imposition of the death penalty without finding that the defendant possessed a purpose to cause the death of the victim. So far as we can tell, no other member of the United States Supreme Court shares that view.

That is another question that might have been, but was not, raised in any way in the trial court or on direct appeal.

5. This is still another question that might have been, but was not, raised in the trial court or on appeal. In any event, we find no merit in it. Neal was sentenced on May 26, 1975. We do not see how the provisions of a legislative act which, even though it was passed on March 3, 1975, did not become effective until January 1, 1976, could have been applied in Neal's trial. We find no merit in appellant's arguments to the contrary. If they are sound, there would be no purpose in the legislature's stating an effective date in any act changing the law as to punishment. The General Assembly stated its intention as to the application of the Criminal Code and of prior law in Ark. Stat. Ann. § 41-102 (Repl. 1977). Pertinent provision of that section are:

(1) The provisions of this Code [§§ 41-101 — 41-3110] shall govern the prosecution for any offense defined by this Code and committed after the effective date [January 1, 1976] hereof.

(3) The provisions of this Code do not apply to the prosecution for any offense committed prior to the effective date of this Code. Such an offense shall be construed and punished in accordance with the law existing at the time of the commission of the offense.

Cases cited by petitioner such as, *Bell* v. *Maryland*, 378 U.S. 226, 84 S. Ct. 1814, 12 L. Ed. 2d 822 (1964), in which a statutory change, abolishing the crime of which the petitioners or appellants had been convicted, became effective before the conviction became final; *Litsey* v. *District Court*, 565 P. 2d 1343 (Colo. 1977) in which the legislative intent as to the application of the new law to pending cases and convictions under the old law is not stated; and *In re Estrada*, 48 Cal. Rptr. 172, 408 P. 2d 948 (1965), in which the amendatory act became effective before the trial of the accused, as inapposite.

In *Hernandez* v. *State*, 109 Tex.Crim. 603, 6 S.W. 2d 748 (1928), the court treated a situation similar to that involved here, and held that when an amendatory act lessening or ameliorating punishment for the offense of murder expressly provided that an offender might be proceeded against and

punished for an offense committed prior to the effective date of the amendatory act under the law as it existed prior to the effective date of the amendatory act, the trial court properly instructed the jury as to the prior law on punishment for murder. This is the correct and appropriate rule as we see it. See also, *United States* v. *Fiotto*, 454 F. 2d 252 (2 Cir.), cert. den. 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed. 2d 117 (1972); *State* v. *Rose*, 156 W.Va. 342, 192 S.E. 2d 884 (1972); *Ex parte Faltin*, 31 Ariz. 465, 254 P. 477, 55 ALR 436, cert. den. 275 U.S. 522, 48 S.Ct. 22, 72 L.Ed. 405 (1927). Nearly all, if not all, of the authorities on the subject have recognized that the question is one of legislative intent. See also, *State* v. *Blunt*, 197 Neb. 82, 246 N.W. 2d 727 (1976). That intent was clearly expressed by the Arkansas General Assembly. It would have been improper for the trial court to have followed the new act in Neal's case.

This leaves only petitioner's ground No. 1, according to our numbering. Inadequate representation by counsel is a ground for postconviction relief, where there has not been an adequate opportunity to raise the question prior to direct appeal. *Hilliard* v. *State*, 259 Ark. 81, 531 S.W. 2d 463. Errors, omissions, improvident strategy or bad tactics on the part of counsel do not require an evidentiary hearing on an allegation of ineffective assistance of counsel or justify postconviction relief from a sentence. *Clark* v. *State*, 255 Ark. 13, 498 S.W. 2d 657. The petitioner must first show prejudice by the alleged incompetence of counsel. *Leasure* v. *State*, 254 Ark. 961, 497 S.W. 2d 1. The question presented on an evidentiary hearing is whether the petitioner has shown by a preponderance of the evidence that the acts or omissions of this attorney resulted in making the proceedings a farce and mockery of justice shocking to the conscience of the court. *Sheppard* v. *State*, 255 Ark. 40, 498 S.W. 2d 668. An evidentiary hearing on the question is not required when the allegations of ineffectiveness relate only to matters ordinarily within the realm of counsel's judgment. *Leasure* v. *State*, supra.

The state concedes that Neal is entitled to seek postconviction relief on the ground of ineffective assistance of counsel. We are limited to the allegations of the petition in determining petitioner's entitlement to a postconviction relief hear-

ing. *Stanley* v. *State*, 258 Ark. 480, 527 S.W. 2d 613. The allegations set out in the petition itself as to ineffective assistance of counsel were that Neal's court-appointed counsel did not:

(1) adequately prepare his defense
(2) object to the introduction of evidence
(3) appropriately advise Petitioner concerning his plea of not guilty by reason of insanity
(4) offer adequate evidence to prove Petitioner's case
(5) cross-examine vigorously
(6) present effective opening or closing arguments, or
(7) otherwise provide Petitioner the standard of performance that was his constitutional due.

The specific allegations under these headings, gleaned from appellant's memorandum, are:

(1)

Counsel made no substantial investigation of Neal's contemporary mental condition and no investigation of possible mitigating circumstances.

(2)

Counsel inexplicably filed a motion to withdraw a motion to suppress evidence which had been filed in Neal's behalf by the public defender; did not challenge the voluntariness of a confession by Neal; did not object to the testimony of one Charles Landis, an inmate of Tucker penitentiary, that Neal admitted he committed the murder.

(3)

None.

(4)

Counsel did not introduce evidence that Neal's confession was obtained as a result of a threat that he would

"burn". or a statement of appellant's accomplice who testified in the case; failed to ask Mrs. Patricia Youngdahl, a psychologist, who had testified that Neal was mildly mentally retarded, whether Neal had a diminished mental capacity so that he was unable to tell right from wrong, in spite of the trial judge's statement that such evidence would be considered; failed to recall Warren Carpenter, a school teacher who had testified that Neal had been aggressive and uncommunicative, for examination on the question of Neal's diminished mental capacity; failed to advocate a defense of diminished mental capacity, to ask for an instruction thereon or to question any witness pertaining to Neal's diminished mental capacity; failed to ask Dr. McAlister, an expert witness for Neal, about the results of I.Q. tests administered to Neal, the extent of Neal's mental retardation, the extent of Neal's brain damage, the details concerning his brain damage or the mental retardation associated with this damage; failed to ask Mrs. Neal any questions concerning Neal's susceptibility to influence by others; failed to offer any witness to testify on the essential element of Neal's insanity defense, i.e., to indicate that Neal did not know that his acts during the crime were wrong or that Neal acted under mental duress; and failed to research or offer a substantial defense on any theory of mitigation, offering only testimony of a psychologist to the effect that Neal was mentally retarded.

(5)

Counsel failed to cross-examine the witness Landis as to his identification of Neal as having been known to him as David Nichols or Dr. Holman, a psychiatrist, about an intelligence test given Neal by another doctor or about the basis of Dr. Holman's opinion that Neal was not mentally retarded to the extent that he did not know right from wrong.

(6)

Counsel, in closing argument, admitted that he had

never seen or heard of a more brutal, merciless murder, that it was more in the form of an execution, that it did not matter who fired the shots, that the only possible conclusion was that Neal was not guilty by reason of insanity because no sane person would have done this act or even participated in it. In the penalty stage, counsel's response to the state argument, that none of the statutory mitigating circumstances existed, consisted of approximately 200 words, and concluded with the statement, "I think you have already decided what you are going to do anyway, so go ahead and do it."

(7)

Counsel failed to examine any of the jurors excused because they stated that they would not impose the death penalty under any circumstances and to request a poll of the jury after it returned a verdict finding Neal guilty of capital felony murder. Counsel moved to change petitioner's plea to not guilty by reason of insanity.

None of the specific allegations considered separately, if true, would justify vacation of the sentence. Perhaps when considered collectively they amount, at the most, to errors, omissions, improvident strategy, or bad tactics. Counsel is presumed to be competent until the contrary is shown. Failure to obtain a desired verdict is not the test on which effectiveness of counsel is judged. In a retrospective review of the record of any trial, any lawyer, including trial counsel, can speculate that one thing or another could, and perhaps should, have been done differently. Still, petitioner's allegations, considered collectively, warrant our granting permission to petitioner to apply to the trial court for relief under Rule 37 on the basis of the specific allegations of ineffective assistance of counsel enumerated above. In all other respects, permission to proceed under Rule 37 is denied.

Petitioner's request that we appoint an attorney to represent him in the proceedings in the trial court is denied. The matter of appointment of counsel is for the trial court.

MAYS, J. concurs.