Billy WOODARD *v.* STATE of Arkansas

CR 76-50                                    617 S.W. 2d 861

Supreme Court of Arkansas
Opinion delivered June 29, 1981

236

*Michael Chertoff*, Washington, D.C., and *Tom Carpenter*, for petitioner.

*Steve Clark*, Atty. Gen., by: *Victra L. Fewell*, Asst. Atty. Gen., for appellee.

John I. Purtle, Justice. Petitioner is an inmate at the Cummins Unit of the Department of Correction under sentence of death from the Poinsett County Circuit Court. He was convicted and sentenced to die on March 4, 1976. The crime was capital felony murder in violation of Ark. Stat. Ann. § 41-4702 (Supp. 1973). We affirmed in *Woodard* v. *State*, 261 Ark. 895, 553 S.W. 2d 259 (1977), cert. denied 439 U.S. 1122 (1979).

Petitioner's first assignment of error is the incriminating confessions allegedly made on October 10 and 11, 1975. He asserts these statements were obtained in violation of his rights under the Fourth, Fifth and Fourteenth Amendments

of the United States Constitution. He relies specifically upon the case of *Dunaway* v. *New York*, 442 U.S. 200 (1979). *Dunaway* essentially holds that a Miranda warning is no cure for a voluntary statement given in violation of the Fourth Amendment. In other words, passing the Fifth Amendment test is the threshold for consideration of the Fourth Amendment barrier to such statements. Although petitioner relies on *Dunaway*, which was decided about the time certiorari was denied in petitioner's case, the *Dunaway* case was bottomed squarely upon the case of *Brown* v. *Illinois*, 422 U.S. 590 (1975). Therefore, this argument would have been as valid on the original appeal as it is at this time. *Dunaway* and *Brown* both hold that there must be probable cause to hold a suspect before a statement made by him may be used against him at the trial. This court specifically ruled upon the voluntariness of the confessions in the direct appeal. We also examined the entire record for any overruled objections which might be prejudicial to petitioner and we found none.

Under the circumstances it seems that this argument is not timely. In any event, the testimony of the officers was that the petitioner voluntarily traveled to the scene of the crime with the deputy and that he was not being held in custody until after he made statements which gave rise to probable cause. We have no quarrel with petitioner's interpretation of *Dunaway* v. *New York*, supra. It just simply does not apply to the circumstances and facts of this case. Petitioner was not held until after he made the inculpatory statements.

The second argument of petitioner is that the confession of September 7 was obtained by coercive efforts on the part of the officers. This was also considered on the initial appeal; furthermore, there was nothing about the statement which was inculpatory. To construe *Brown* and *Dunaway* as strictly as petitioner contends would prevent the police from questioning any suspect unless they had probable cause for his arrest. We do not believe the United States Supreme Court intended this result. After the Supreme Court of the United States decided that Dunaway had been seized without probable cause, they proceeded to the question of whether

the connection between the unconstitutional police conduct and the incriminating statements was sufficiently attenuated to permit the use of them at the trial. *Brown* identified several factors to be considered when determining whether the confession was obtained by exploitation of an illegal arrest: the temporal proximity of the arrest and confession, the presence of intervening circumstances, and particularly the purpose and the flagrancy of the official misconduct. Such confession may be admitted only after the state has shouldered the burden of proving the statements were not a product of the illegal seizure.

Petitioner raises the issue of the death qualified jury. He argues that juror Bonham was the brother-in-law of the sheriff and should have been excused for cause. Bonham also stated initially that he believed the testimony of a police officer deserves special credence. If the court had not followed through with this juror we would have to agree with the petitioner. However, the following question and answer places the matter within the sound discretion of the trial court:

THE COURT: In weighing the evidence and the testimony do you feel like that you might be more ready to believe or to give more weight or credit to the testimony of a police officer because he was a police officer?

JUROR BONHAM: No, sir, not necessarily, no sir.

In addition to being a matter which is within the discretion of the trial court, this argument could have been raised on direct appeal but it was not. Therefore, we do not find it reversible error. In *Beed* v. *State*, 271 Ark. 526, 609 S.W. 2d 898 (1980), the objection was made and the point was argued on direct appeal. The very fact that we did reverse the case in *Beed* is an indication that we consider these matters very seriously.

Petitioner further argues that the court erred in excluding death-scrupled veniremen from the jury panel in violation of the Sixth and Fourteenth Amendments as set out in

*Witherspoon* v. *Illinois*, 391 U.S. 510 (1968), and its progeny. *Witherspoon* was one of the most widely established doctrines in criminal law at the time the petitioner was tried. Surely, an objection would have been made to the seating of a juror which the petitioner thought was not qualified to serve. Certainly such argument would have been carried forth in the initial appeal if there were any substance to the arguments now presented. From the excerpts of the voir dire transcript it appears that the court excluded jurors who stated they did not believe in the death penalty. It is fair to say that these jurors expressed conscientious scruples in opposition to the death penalty. Since this matter could have been initially argued and we do not see anything which would render the judgment void, we do not find reversible error. In other words, it does not appear that it is possible the sentence was imposed in violation of the Constitution or laws of the United States or of this state.

Petitioner again argues that our death statute is unconstitutional as applied to the petitioner. We ruled squarely upon this in the original appeal.

It is also argued that the petitioner's Sixth Amendment confrontation rights and the due process clause were violated by the prosecutor's statements in both the guilt and penalty phase of the trial. The record does not reveal any objection to the remarks at the time. Therefore, it is too late to raise this issue at this time. If the prosecutor made remarks which were outside the record, it would have been proper to object and request that the remarks be stricken from the record. *Parker* v. *State*, 265 Ark. 315, 578 S.W. 2d 206 (1979). The record does reveal that the petitioner was referred to by the prosecutor as an "unemployed mechanic and dog thief possibly." Objection was made and the court admonished the jury. The comment was withdrawn and stricken from the record.

Petitioner again argues the impropriety of allowing a nonsequestered rebuttal witness to testify. This matter was treated during the initial appeal and presumably was raised in the Petition for Certiorari to the United States Supreme Court which was denied.

The only other substantial allegation made by petitioner is ineffective assistance of counsel. It appears these allegations are merely second guesses at what should have been done. Perhaps no two lawyers would handle a matter in the same manner. For example, petitioner contends counsel failed to discover that the police had arrested petitioner on October 10 without probable cause. This is a conclusion and no facts are alleged. Since the statements made on October 10 were furnished to petitioner and counsel before trial, it should be obvious that he was under arrest at the time. However, the record does not show that the petitioner was arrested prior to the time he made the statements. It may be true that *Dunaway* v. *New York*, supra, had not been decided at that time but certainly *Brown* v. *Illinois*, supra, and *Wong Sun* v. *United States*, 371 U.S. 471 (1963), had been decided. They both stand for the same proposition here argued by petitioner. It would be mere speculation now to decide whether the trial court would have excluded these confessions had they been challenged under the Fourth Amendment theory. It is also argued that counsel failed to object to certain questions asked by the prosecutor on cross-examination.

We have repeatedly held that the scope of cross-examination is largely within the discretion of the trial court. *Alexander* v. *State*, 257 Ark. 343, 516 S.W. 2d 368 (1974).

It appears that the petitioner does not understand the purpose of Criminal Procedure Rule No. 37. It is not intended to provide a review of mere error in the conduct of the trial or to serve as a substitute for appeal. *Clark* v. *State*, 255 Ark. 13, 498 S.W. 2d 657 (1973). It also seems that petitioner feels that any error is subject to collateral attack. Unless an allegation raises issues so fundamental as to render the judgment void, such issues cannot be raised by the use of Rule 37. *Orman* v. *Bishop*, 245 Ark. 887, 435 S.W. 2d 440 (1968);*Moore* v.*Illinois*, 408 U.S. 786 (1972). Issues not raised by appellant in his original appeal are considered waived unless they are so fundamental as to render the judgment void. *Wicks* v. *State*, 270 Ark. 781, 606 S.W. 2d 366 (1980).

Petition denied.