Billy **WOODARD**, Appellant,

v.

Willis **SARGENT**, Warden, Cummins Unit, Arkansas Department of Correction, Appellee.

No. 83–2168.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 8, 1986.

Decided Nov. 20, 1986.

Rehearing and Rehearing En Banc Denied Jan. 28, 1987.

Reed E. Hundt, Washington, D.C., for appellant.

Clint Miller, Asst. Atty. Gen., Little Rock, Ark., for appellee.

Before McMILLIAN, ARNOLD, and JOHN R. GIBSON, Circuit Judges.

ARNOLD, Circuit Judge.

This death-penalty case is once again before us, on remand from the Supreme Court of the United States.

The appellant, Billy Woodard, has been tried by jury, found guilty of capital felony murder, and sentenced to death. See *Woodard v. State*, 261 Ark. 895, 553 S.W.2d 259 (1977), *cert. denied*, 439 U.S. 1122, 99 S.Ct. 1034, 59 L.Ed.2d 83 (1979). A petition for post-conviction relief under Ark.R.Crim.P. 37 has been denied. *Woodard v. State*, 273 Ark. 235, 617 S.W.2d 861, *cert. denied*, 454 U.S. 1068, 102 S.Ct. 618, 70 L.Ed.2d 603 (1981). Woodard then brought this petition for federal habeas corpus in the United States District Court for the Eastern District of Arkansas, which also denied relief. 567 F.Supp. 1548 (E.D. Ark.1983). When this case was last before us, on appeal from the District Court's denial of habeas corpus, we reversed, holding that Woodard's conviction was invalid under the rule of *Grigsby v. Mabry*, 758 F.2d 226 (8th Cir.1985) (en banc), in which

this Court held that so-called "death-qualified juries," from which all persons who refused to consider the death penalty had been excluded, were not fairly representative of the community and were not impartial on the question of guilt or innocence. Since Woodard's jury was "death-qualified," we directed that his conviction be set aside and that he be freed unless the State chose, within a reasonable time, to try him again before a constitutionally selected jury. *Woodard v. Sargent*, 753 F.2d 694 (8th Cir.1985).

In *Lockhart v. McCree*, —— U.S. ——, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), the Supreme Court reversed our *Grigsby* holding. The Court held that "death-qualified juries," as such, are not unconstitutional. Thus, the ground upon which we set aside Woodard's conviction on the prior appeal is no longer valid, and in Woodard's case itself, the Supreme Court has granted certiorari, vacated our previous judgment, and remanded for reconsideration in light of *Lockhart v. McCree*. *Sargent v. Woodard*, —— U.S. ——, 106 S.Ct. 1964, 90 L.Ed.2d 650 (1986).

In view of the Supreme Court's holding in *McCree*, our previous disposition of Woodard's case obviously cannot stand. It now becomes our duty, therefore, to examine the various other arguments he makes against his conviction and sentence, none of which we reached on the prior appeal. See *Woodard v. Sargent*, 753 F.2d at 695 n. 1. We now hold that all of the arguments urged by Woodard as invalidating the conviction itself are without merit. The conviction will stand. The sentence of death, however, will be set aside as constitutionally invalid, for reasons to be explained in this opinion.

I.

We first note briefly those arguments Woodard makes that, if upheld, would have the effect of invalidating the conviction of capital felony murder itself. Logically, these arguments should be considered first, since, if any one of them is upheld, it would be unnecessary for us to go on to consider

points that go only to the validity of the sentence. (This is why, on the prior appeal, we considered only the *Grigsby* argument, the effect of which was to set aside the conviction, and did not reach any of the other points urged by Woodard.)

Woodard attacks his conviction on a variety of grounds. He claims that his court-appointed counsel was constitutionally ineffective at the guilt phase of his trial; that a biased juror was allowed to remain on the jury, and not removed for cause; that prosecutorial misconduct occurred during the closing argument on the question of guilt or innocence; that it was constitutional error, in violation of the Sixth and Fourteenth Amendments, to admit into evidence a newspaper reporter's testimony of an interview given by the defendant while he was in custody; that the voir dire of the jury was not fairly conducted; and that involuntary statements were admitted against him, in violation of the Fifth and Fourteenth Amendments.[1]

We deem it unnecessary to discuss each of these arguments in detail. The District Court's[2] opinion is thorough and comprehensive, and it explains in detail why each of these arguments lacks merit. As to these points, we affirm for the reasons given in the District Court's opinion. No purpose would be served by further elaboration on our part.

The result, on this branch of the case, is that Woodard's conviction will stand. If he is to receive habeas corpus relief from this Court, it will be with respect to his sentence only.

## II.

Woodard also advances a variety of arguments in an attempt to establish that the death sentence was constitutionally invalid. Among other things, he argues that the "avoiding arrest" aggravating circum-

stance is invalid because it duplicates an element of the crime, that the comparative sentence review conducted by the Supreme Court of Arkansas is constitutionally inadequate, that the jury checklist of aggravating and mitigating circumstances improperly constrained the jury's discretion in violation of state law, and that a one-week delay between the guilt and penalty phases of the trial was so unfair as to deprive him of his life without due process of law. We have considered and now reject each of these arguments. Again, we adopt the reasoning of the District Court.

## III.

There remain to be discussed three arguments urged by Woodard against the constitutional validity of his sentence, arguments not previously listed in this opinion. They are (1) that the pecuniary-gain aggravating circumstance unconstitutionally duplicated an element of the underlying offense of capital felony murder, in violation of the rule announced by this Court in *Collins v. Lockhart,* 754 F.2d 258 (8th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985); (2) that Woodard's counsel was constitutionally ineffective in the penalty phase of the trial for failing to cause the trial court to call to the jury's attention a recently adopted mitigating circumstance, the absence of a prior criminal record; and (3) that the death penalty is disproportionately imposed on defendants convicted of murdering white people (Woodard's victim was white). We address each of these arguments in turn.

## A.

■ Woodard was charged and convicted of "the unlawful killing of a human being when committed by a person engaged in the perpetration of ... robbery ...." Ark.

---

1. We have briefly listed in text those arguments that Woodard now makes against the constitutional validity of his conviction. For the sake of clarity, we note that the arguments are set forth in detail in the Brief of Appellant filed in this Court on March 19, 1984, during the course of the former appeal.

2. The Hon. Garnett Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

Stat.Ann. § 41–4702(A) (Supp.1973). This conviction placed Woodard in the class of persons eligible for the death penalty. It then became the duty of the jury to consider aggravating and mitigating circumstances and decide whether to sentence Woodard to death or to life imprisonment without parole. The jury found that two aggravating circumstances existed: "the capital felony was committed for pecuniary gain," Ark.Stat.Ann. § 41–4711(e) (Supp.1973), and "the capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody...." Ark.Stat.Ann. § 41–4711(d) (Supp.1973). (We have already rejected Woodard's attack on the avoiding-arrest aggravating circumstance: although a consequence of every murder is the elimination of the victim as a potential witness, avoiding arrest is not necessarily an invariable motivation for killing, so this aggravating circumstance does not as a matter of logic necessarily duplicate an element of the underlying capital crime.)

■ The same cannot be said, however, with respect to the pecuniary-gain aggravating circumstance. Under *Godfrey v. Georgia*, 446 U.S. 420, 427–28, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980), it is the duty of the state to provide a "meaningful basis for distinguishing the few [murder] cases in which [the death penalty] is imposed from the many cases in which it is not." (inner quotations omitted) Everyone who commits murder in the course of a robbery commits the crime for purposes of pecuniary gain. The pecuniary-gain aggravating circumstance, accordingly, fails to accomplish the narrowing or distinguishing objective set out in *Godfrey*.

■ In *Collins v. Lockhart*, 754 F.2d 258 (8th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985), we accepted this precise argument, holding that it is unconstitutional under the Eighth Amendment to impose the death penalty in cases of capital felony murder committed during the course of a robbery on the basis of the aggravating circumstance that the murder was committed for pecuniary gain.

A petition for rehearing, with suggestions for rehearing en banc, was denied in *Collins*, and the Supreme Court denied certiorari. *Collins* is the law of this Circuit, and we, as a panel of the Court, have no power to re-examine it. *E.g., Mizokami Brothers of Arizona, Inc. v. Mobay Chemical Corp.*, 798 F.2d 1196 (8th Cir.1986). The State of Arkansas contends that *Collins* was wrongly decided, arguing that it was based on misunderstandings as to state law, but we are powerless to consider this argument.

■ The State also argues that *Collins* should not be applied "retroactively." *Collins* was decided by this Court in 1985, while Woodard's trial took place long before, in March of 1976. *Collins* was a departure from prior law, according to the State, and therefore should not be applied to invalidate Woodard's sentence. When Woodard's case was first appealed to this Court from the District Court's denial of habeas corpus relief, counsel urged this argument. Woodard's case was argued before us during the same session of Court, and before the same panel, before which *Collins* was argued. Our opinion in *Woodard* did not reach the *Collins* point, but only because it was unnecessary to do so. Woodard's conviction had been set aside on the basis of the *Grigsby* point, having to do with death-qualified juries. It was wholly unnecessary, and would have been superfluous, for us to go ahead and address other arguments made by Woodard, particularly other arguments, like the *Collins* point, that went only to the validity of his sentence. Since the conviction itself had been set aside, the sentence automatically fell with it. In these circumstances, whatever the analysis might be under general retroactivity principles laid down by the Supreme Court, see *e.g., Solem v. Stumes*, 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984), it would be a gross injustice for us to deny to Woodard the benefit of the point won by Collins. We decline to do so. We hold that the *Collins* argument is available to Woodard in the peculiar circumstances of this case, which originally came up to

this Court as a companion to *Collins*. In so holding, we express no view on whether *Collins* applies to other defendants whose circumstances may not be so uniquely similar to those of the *Collins* case itself.[3] Whether *Collins* should be more widely available "retroactively" to invalidate sentences in other cases is a question that will have to be answered on another day, when those other cases come before us. We recognize that the parties need guidance on this point. Indeed, counsel for the State asked us at oral argument not to base our holding on the issue of retroactivity on the narrow circumstance that Woodard's case has followed the same procedural track as Collins's. But we decline the invitation to express ourselves more broadly than the necessities of the case before us require.

In short, we hold that Woodard is entitled to the benefit of the *Collins* point, and that this panel is bound by *Collins*. Accordingly, Woodard's death sentence, which was based in part on the pecuniary-gain aggravating circumstance, must be set aside.

### B.

Woodard also claims that his lawyer was constitutionally ineffective during the penalty phase of the trial because he failed to secure for his client the benefit of a new mitigating circumstance added to the statute by the Arkansas General Assembly shortly before Woodard's case was tried. The new Arkansas Criminal Code became effective on January 1, 1976. Ark.Stat. Ann. § 41–101 et seq. (Repl.1977). The lack of a prior history of significant criminal activity was listed as a mitigating circumstance for the first time in this newly adopted Criminal Code. Ark.Stat. § 41–1304(6) (Repl.1977). No evidence was introduced in Woodard's trial to show that he had any history of prior criminal activity. Yet, his lawyer failed to request a jury instruction on this mitigating circumstance, and failed to ensure that the checklist of

aggravating and mitigating circumstances submitted to the jury included lack of a prior history of significant criminal activity as one possible mitigating circumstance. Indeed, in view of the record in this case, containing no evidence whatever of prior criminal activity on Woodard's part, it seems that he would have been entitled to a peremptory instruction from the trial court directing that the jury find the existence of this mitigating circumstance.

We think it clear that this omission on the part of counsel was serious and important. The whole question of the death penalty depends, under Arkansas law, on the jury's discretion in weighing aggravating against mitigating circumstances. Here, the jury found two aggravating circumstances and no mitigating circumstances. A finding of a mitigating circumstance should have been an important objective in Woodard's case, and the failure to seek the inclusion of this obvious mitigating circumstance certainly fell below the threshold of reasonably competent assistance. We do not know why counsel failed to make this request. Perhaps he did not closely examine the details of the new statute. In any event, we can conceive of no possible tactical reason for such an omission.

■ It is not enough, of course, for a criminal defendant complaining about his counsel's conduct to establish that counsel made a significant error. Prejudice must also be shown, in the sense of a reasonable probability that the outcome of the trial would have been different had counsel not committed the default in question. See *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As *Strickland* puts it, the question is whether counsel's error sufficiently undermines confidence in the result of the trial to require that it be set aside. We think the answer to this question is yes. While it is, of course, impossible at this point to say with certainty what the jury would have

---

**3.** The appeals of Earl Van Denton and Paul Ruiz, also decided today, were, like Woodard's case, initially argued to us during the same session of Court, and before the same panel, as Collins's case. We are therefore holding, in an opinion filed today, that, like Woodard, Ruiz and Van Denton are entitled to the benefit of the *Collins* point.

done if it had known that one statutory mitigating circumstance existed in Woodard's case, it is significant that the first vote taken by the jury on the question of penalty was seven to five. At one point, therefore, the jury considered the issue close. We believe there is a reasonable probability, in the *Strickland* sense, that the outcome of the case would have been different had the jury known of this clearly applicable mitigating circumstance. We therefore hold, on this additional and alternative ground, that the death sentence imposed on Woodard was constitutionally invalid.

### C.

Woodard also argues that his death sentence was invalid because it was a result of racial discrimination. He is white, but his victim was also white, and he claims to be able to establish that the death penalty is disproportionately imposed on defendants who kill white victims, as opposed to those who kill black victims. The theory is that juries are placing a higher value on white lives than they are on black lives.

The time is not ripe for us to pass on this argument. It is now before the Supreme Court in the cases of *McCleskey v. Kemp*, No. 84–6811, and *Hitchcock v. Wainwright*, No. 85–6756, which were argued on October 15, 1986. It would serve little purpose for us to examine the argument at length at this point. We have already held that Woodard's death penalty must be set aside for two other independent reasons. If it becomes necessary at some future point in Woodard's case for this argument to be reached, we will by then be in a much better position to do so, because we will have received the benefit of the Supreme Court's holdings in *McCleskey* and *Hitchcock*.

### IV.

To summarize: we uphold the validity of Woodard's conviction. We hold, however, that because the aggravating circumstance of pecuniary gain is invalid as applied in cases of capital felony murder committed during the course of robberies, and because Woodard's counsel failed to call the jury's attention to the mitigating circumstance of no prior history of criminal activity, the death penalty was invalid and must be set aside. The judgment of the District Court, rejecting Woodard's attacks on his conviction and sentence, is therefore reversed, and this cause is remanded with instructions to that Court to enter judgment reducing Woodard's punishment to life imprisonment without parole, unless the State, within such reasonable time as the District Court may fix, commences proceedings to re-try the question of punishment, these new proceedings to be conducted in accordance with the law set out in this opinion.

It is so ordered.